UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LOCAL 338, RWDSU,

                    Plaintiff,

    - against -                       <u>06-CV-3215 (BMC) (JO)</u>

TRADE FAIR SUPERMARKETS,
a/k/a TRADE FARE SUPERMARKETS,

                    Defendant.
------------------------------------------------------------X

PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANT'S
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>

Author: ARL   Doc Number:74555

## INTRODUCTION

Plaintiff Retail, Wholesale and Chain Store Employees Union, Local 338 ("Local 338" or the "Union"), respectfully submits this reply memorandum of law in further support of its motion for summary judgment to confirm and enforce the arbitration award issued by Arbitrator Alice Winkler (the "Arbitrator") on March 31, 2006 (the "Award"), and in opposition to the cross-motion for summary judgment filed by Defendant Trade Fair Supermarkets ("Trade Fair" or the "Employer").

Local 338 seeks confirmation and enforcement of the Award pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185. To begin with, there is no dispute that the Arbitrator acted within the scope of her authority and that the Award drew its essence from the relevant collective bargaining agreement (the "Agreement") between Local 338 and Trade Fair. (See Defendant's Response to Plaintiff's 56.1 Statement ("Def.'s Resp. to 56.1 Stmt."), ¶ 11.)

In its opening brief, Plaintiff established that the Award is final under Second Circuit law. In response, Defendant attempts to muddy the clear Second Circuit waters by pointing to grievant Hesham Azzam's employment by National Farm. Defendant's efforts to obscure the issue are unavailing.

In short, the Award is final because the Arbitrator definitively resolved the core issue before her, namely, the Employer's failure to properly classify the grievant as Assistant Manager. Azzam's employment by National Farm is a subsidiary damages issue, and the Second Circuit has held that an arbitrator's retention of jurisdiction to determine damages does not affect the finality of an award.

1

Trade Fair also contends that the Award should not be confirmed because Trade Fair has complied with its remedy provisions. This is absolutely false. Trade Fair has flouted the Award in every respect. It has failed to make any payment, or even a good-faith initial payment, refused to provide adequate documentation, and ignored essential elements of the remedy including dues and health care and retirement fund contributions.

Also contrary to Trade Fair's contention, the Arbitrator has declined to exercise jurisdiction. In fact, she has declined to do so precisely because of Trade Fair's failure to even attempt to comply with the Award. The Arbitrator's refusal to exercise jurisdiction underscores even further the need for the Award to be confirmed.

Finally, Local 338 should be awarded pre-judgment interest and attorneys' fees because Trade Fair has utterly flouted the Award.

## I.     THE ARBITRATOR'S AWARD IS FINAL

The Arbitrator's Award is final. Defendant unsuccessfully attempts to obscure this fact by claiming significant issues related to damages still remain to be determined. However, the Second Circuit has made it clear that an arbitration award is final even where the arbitrator retains jurisdiction in order to fix damages.

Defendant attempts to magnify the damages issue by focusing in particular on Azzam's employment by National Farm. This is simply irrelevant to the question of finality.

As reflected in Plaintiff's opening memorandum of law, the Award is final because the Arbitrator definitely resolved the only issue before her, namely, the Employer's failure to classify the grievant as Assistant Manager. Moreover, as also elaborated in Plaintiff's opening brief, the Second Circuit has found that "the reservation of jurisdiction over a detail like

2

overseeing the precise amount of backpay owed does not affect the finality of an arbitrator's award." Burns International Security Services v. International Union, United Plant Guard Workers of America, 47 F.3d 14, 16 (2d Cir. 1995); see also Plaintiff's opening Memorandum of Law, at 4-8.

In short, that the Arbitrator has retained jurisdiction over the damages issue does not in any way undermine the finality of the Award. In spite of Defendant's best efforts to demonstrate otherwise, Azzam's employment by National Farm falls squarely within the ambit of damages, and therefore does not affect the finality of the Award. Moreover, it should be noted that the Arbitrator accounted in her Award for the periods of time in which Azzam worked for Trade Fair and National Farm. (See Affidavit of Abigail R. Levy in Support of Plaintiff's Motion for Summary Judgment ("Levy Aff."), Exh. D, page 2.) Accordingly, the Arbitrator fully addressed the issue of Azzam's employment by National Farm, and left open only the ministerial detail of calculating the precise amount of damages.[1]

## II. THE ARBITRATOR'S AWARD MUST BE CONFIRMED AND ENFORCED

The Arbitrator's Award must be confirmed. Not only is the Award final, but Defendant has flouted it in every respect. Further, confirmation of the Award is all the more imperative because the Arbitrator has declined at this juncture to exercise jurisdiction over the damages issue.

---

[1] The instant matter is clearly distinguishable from A/S Siljestad v. Hideca Trading, Inc., 678 F.2d 391 (2d Cir. 1982). In Hideca Trading, the arbitrators issued a supplemental award which provided a remedy not contemplated in the original award. Thus, the Court confirmed that the original award was not final because it was "not intended by the arbitrators to be a complete determination of all of the claims submitted to them." 678 F.2d at 392. In the instant matter, in contrast, the Arbitrator clearly intended her Award to resolve the only issue before her, to wit: whether the grievant was entitled to the protection of the collective bargaining agreement while he was employed by Trade Fair. (See Plaintiff's Rule 56.1 Stmt., ¶ 5.) Defendant does not dispute that this was the only issue presented to the Arbitrator. (See Def's Resp. to 56.1 Stmt., ¶ 5.) Moreover, her Award set forth a comprehensive damages remedy, leaving only the calculation outstanding.

3

Contrary to Defendant's contention, the Employer has failed to comply with the Award in any respect. The Award requires Trade Fair to make the grievant whole by compensating him in such a way as to redress the Employer's failure to treat him as a bargaining unit Assistant Manager. This make-whole remedy includes regular backpay; overtime pay; premium pay; and, weekend and holiday pay. The remedy also includes dues to be paid to the Union. Finally, the remedy accounts for health insurance to be reimbursed directly to Azzam, and applicable payments to be made directly to the Local 338 Retirement Fund. The Award also requires the Employer to provide the Union "with records to support its calculation of the amounts paid along with its payments in this matter."

To begin with, it is undisputed that Defendant has made no payment whatsoever, even though all payments were to be made to Azzam and to the Union within thirty days of the date of the Award, i.e., no later than April 30, 2006, well over six months ago. (See Def.'s Resp. to 56.1 Stmt., ¶ 12.) In fact, Defendant did not even make a "good faith payment," which the Arbitrator provided for in her Award in the event that the parties could not agree as to the precise amount of damages owed.

In the face of Trade Fair's failure to abide by the Award, Defendant claims that it attempted to settle this matter but did not receive a response from Plaintiff. Defendant also argues that it provided records to support its offer, and that such records trigger the Arbitrator's jurisdiction. Defendant is incorrect.

As a threshold matter, contrary to Defendant's contention, Trade Fair did not make any offer of payment until after Local 338 was forced to sue Trade Fair in order to confirm the Award. The Union filed this action on June 28, 2006. Yet, it was not until July 12, 2006 that the Employer's counsel sent a letter to the Union's counsel, in which Trade Fair offered to pay

4

$3,000. Moreover, this $3,000 offer did not purport to reflect a precise calculation of what was owed, but was merely alleged to be "more than fair...to settle the entire matter." (See Levy Aff., Exh. F.)

Trade Fair's July 12 letter certainly did not address all the distinct elements of the Award's remedy, including wages, dues, health care contributions and Local 338 Retirement Fund payments. Moreover, because the July 12 letter did not attach any supporting records, as was also required by the Award, the Union had no means of verifying whether the offer correctly reflected the amounts owed to and on behalf of the grievant. It was not until August 30, 2006, over a month and a half later, that the Employer finally produced a record that it claimed supported its $3,000 offer. (See Levy Aff., ¶ 11.) However, that record proved to be grossly inadequate.

According to Trade Fair, "the documentation and spreadsheet which it has provided to the Union to support its calculation of damages has been reserved by the Arbitrator for determination and review." (See Defendant's Memorandum of Law, at 7.) This could not be farther from the truth. In fact, the Arbitrator explicitly recognized in her September 21, 2006 correspondence to counsel for both parties that the Employer's document is fatally inadequate. She correctly pointed out that it "does not appear to cover the entire period in question." (See Levy Aff., Exh. I.) In fact, the document shows wages only for five weeks, even though the Award covers periods from October 2003 to January 2005.[2] The Arbitrator also observed that it is "unclear what is being shown in the columns under the headings Regular hours, OT hours, Gross Pay, Add'l Gross pay as they relate to columns showing the amounts earned in the specific weeks referenced." Significantly, although not noted by the Arbitrator, the Trade Fair document

---

[2] It is a mystery why the Employer's wage record only reflects wages for five weeks in late 2003 when Trade Fair concedes that Azzam worked for Trade Fair (as well as National Farm) from March 2004 to September 2004. (See Defendant's Memorandum of Law, at 3.)

5

does not in any way reference dues, health care contributions, or Local 338 Retirement Fund payments, all essential elements of the Award.

Accordingly, Trade Fair's position that its belated production of a wage document triggers the Arbitrator's jurisdiction is simply false. In fact, the Arbitrator went out of her way in the September 21, 2006 correspondence to point out that "until such time as the Employer produces records to support its calculation of the amount owed to the Grievant, it would be premature to schedule another arbitral hearing." (See Levy Aff., Exh. I.) The Arbitrator went on to underscore her conclusion that the Employer's document production had been entirely inadequate by stating, "At the very least, the Employer should provide the Union with the calculation upon which the $3000 proffer is based." Finally, the Arbitrator indicated her readiness to exercise jurisdiction "in the event the [Union] disputes the company's method of calculation or the documentation upon which it is based once such information and documentation has been produced." (emphasis added). (See Levy Aff., Exh. I.)

As can be seen, the issue of the Arbitrator's jurisdiction not only does not preclude the finality of the Award, but highlights the necessity for the Award's confirmation. The Employer has flouted the Award, and it has done so in a manner which prevents the Arbitrator from asserting jurisdiction over the damages calculation.[3] Therefore, if this Court were to deny confirmation of the Award, the Union would be left with no recourse to enforce the Award's remedy provisions.

---

[3] Of course, as discussed above, even if the Arbitrator had chosen to exercise jurisdiction over the damages issue, this would not preclude the Award from being considered final.

6

### III. THE UNION IS ENTITLED TO PRE-JUDGMENT INTEREST AND ATTORNEYS' FEES

As elaborated in Plaintiff's opening brief, the Second Circuit has found that pre-judgment interest is ordinarily granted in labor arbitration cases, particularly where, as here, the underlying contract provides for the finality of arbitration awards. Moreover, as set forth above, both pre-judgment interest and attorneys' fees are appropriate here because Trade Fair has wholly flouted the Award.

In response, the Employer raises two points that are either irrelevant or incorrect. First, Trade Fair emphasizes that it did not fire Azzam. However, this has nothing to do with the arbitration. As noted above, the arbitration related simply to the question of whether the Employer improperly failed to classify Azzam as a bargaining unit Assistant Manager. Of course, the Arbitrator found that the Employer indeed failed to do so.

Second, Trade Fair claims it should not be responsible for interest and attorneys' fees because it made a good faith effort to settle the action. In fact, Trade Fair goes so far as to contend that "this litigation should not have been commenced" and that it "has always been willing to abide by the Arbitration Award." (See Defendant's Memorandum of Law, at 10.) This is absurd. As discussed above, Trade Fair did not make its settlement offer until after the Union had been forced to file suit in this action. Moreover, as also discussed above, the settlement offer did not comply with the Award, as it did not address all the distinct remedies provided for in the Award, did not cover most of the period at issue, and was not accompanied by the required documentation.

## CONCLUSION

Based on the foregoing, Local 338 respectfully requests that the Court grant its motion for summary judgment and deny Trade Fair's motion for summary judgment, and that the Court grant Local 338's request for pre-judgment interest and reasonable attorneys' fees it incurs in making its motion and opposing the Employer's motion.

Dated: November 22, 2006
      New York, New York

FRIEDMAN & WOLF

By: _William Anspach_ (signature)

William Anspach (WA-7233)
Abigail R. Levy (AL-4822)

1500 Broadway, Suite 2300
New York, New York 10036
(212) 354-4500

Attorneys for Plaintiff
